## HALL *vs.* REED.

Where a contract was made between the complainant and the defendant, under seal, by which the latter agreed to separate iron ore for the former at a specified price per ton, and the complainant stated, in his bill, that at the time of making such contract he was not aware of the existence of the provision of the revised statutes declaring that twenty hundred pounds avoirdupois shall constitute a ton ; and that it was the uniform practice and usage, in the vicinity of the parties, to estimate iron ore by gross weight, at the rate of 2240 pounds to the ton, which usage was known to, and acted upon by, the parties ; and that it was understood and intended by both parties that the ore should be accounted for at such gross weight ; and the bill prayed for a perpetual injunction against a suit at law, brought by the defendant to recover of the complainant compensation for separating the ore at the rate of 2000 pounds to the ton, and also prayed that the contract might be re-

Hall *v.* Reed.

formed, so as to correspond with the usage and the understanding of the parties; *Held* that the court of chancery could not make a decree, reforming the contract, founded upon the complainant's alleged ignorance of the existence of the statute, fixing the number of pounds necessary to constitute a ton, where the answer of the defendant denied any knowledge of the alleged ignorance on the part of the complainant, and positively denied the existence of the alleged custom, or that the defendant intended to contract to separate the ore in any other way than at the legal rate of 2000 pounds to the ton.

Courts will sometimes grant relief against a *mistake* of the law, where it can be done without impairing the rights of those who were ignorant of the existence of any such mistake, when their rights accrued.

Distinction between *ignorance* of the law, and a *mistake* of law.

Where a party has made a contract with another to separate ore for him, at a specified price per ton, and has carried such contract partially into effect, by separating ore under it for several months, without any knowledge of the alleged ignorance of the other party that 2000 pounds was a ton, instead of 2240 pounds, as he supposed, the court of chancery cannot reform the contract, so as to require such party to separate ore at the stipulated rate for each gross ton, without making an entirely new contract for him.

The case of *Many* v. *The Beekman Iron Company*, (9 *Paige's Rep.* 188,) explained, and limited.

THIS was an application, upon bill and answer, for the dissolution of an injunction. The bill stated that in October, 1843, a written contract, under seal, was made between the complainant and the defendant, at the town of Moriah in the county of Essex, whereby Hall, the complainant, was to furnish to Reed the defendant, a machine for separating ore, on a lot in Moriah specified in the agreement, and was to deliver ore at the machine sufficient to keep it in operation, and to furnish for one year suitable wood, at seven shillings a cord, to burn the ore. Reed agreed to separate the ore for Hall at seven shillings a ton; which last mentioned compensation Hall was to pay in money, provisions, iron, &c., in the proportions mentioned in the contract, as Reed might need it; and the parties were to settle every three months during the running of the contract, and if there was a balance found due to Reed at the time of any such quarterly settlement, Hall was to pay the same in the manner mentioned in the contract. Reed was also to have the use of a house and barn on the lot; and the contract also contained other stipulations between the parties, as to the furnishing cer-

Hall. v. Reed.

tain tools, for the purpose of separating such ore, and the expenses of keeping them in repair, &c. The bill further stated that, at the time of making such contract between the parties, the complainant, was not aware of the existence of the provision of the revised statutes declaring that twenty hundred pounds avoirdupois shall constitute a ton; that prior to, and at the time of, making the contract, it had been, and then was, the uniform and invariable practice and usage of all dealers in iron ore, and of all persons following the business of digging, separating, or selling iron ore, at the place mentioned in the contract, and at all other places in that county and the adjoining county of Clinton, where the iron mining business was carried on, to estimate iron ore by gross weight, at the rate of 2240 pounds to the ton; that at the time the contract was made between the parties, it was understood and intended by both of them that the ore to be separated by Reed should be accounted for at such gross weight, estimating the ton according to the uniform and well established usage aforesaid; which usage was well known to both of the contracting parties, and that they intended to adopt it in their said agreement. The complainant also alleged that, at the end of the first quarter, the parties settled their accounts under the contract upon that principle, without any objection on the part of the defendant; when a considerable balance was found in favor of the complainant; that at the end of the second quarter Reed refused to settle upon that principle, and insisted upon being paid for separating the ore at the rate of 2000 pounds to the ton; and that the complainant having refused to pay him at that rate, the defendant had brought an action at law against him, for an alleged breach of the contract, although the defendant had been overpaid, if the ore separated should be estimated at the rate of 2240 pounds to the ton. The complainant therefore prayed for a perpetual injunction, restraining the defendant from proceeding at law for the alleged breach of the contract, and that such contract might be reformed, so as to correspond with the understanding of the parties and the usages of persons engaged in that business.

Hall *v.* Reed.

The defendant, by his answer, denied the existence of the alleged custom or usage of persons dealing in iron ore, as well as that at the time of making the contract, stated in the bill, he understood, or intended, or in any way agreed, that the ore mentioned in the contract, and which was to be separated by him, was to be separated at gross weight, or that it was understood, intended, or agreed, or supposed by him that such ore was to be estimated in any other way than at the legal rate of 2000 pounds to the ton. He also denied that, at the time the contract was made, he either supposed or believed, or had any reason to believe, that the complainant thought he was contracting for the separation of ore by the gross ton; but, on the contrary, the defendant stated in such answer, that he then and still believed that at the time of making the contract, the complainant Hall-well knew that by the laws of this state a ton was but 2000 pounds. And he further denied that he ever settled with the complainant upon the principle of estimating the ore, separated in pursuance of the contract, at the gross ton; or that any settlement whatever had been made between the parties, at the end of the first quarter, or at any other time; or that he had at any time or in any manner assented or agreed, either expressly or impliedly, that the ore raised or to be raised by him, under the contract, should be estimated at the gross rate of 2240 pounds to the ton.

*N. Hall, Jun.* for the complainant.

*A. C. Hand,* for the defendant.

THE CHANCELLOR. There is no foundation for the objection that the matter in controversy does not exceed $100. There is nothing to show how much ore has been separated already, or how much could have been separated within the three years; so as to fix the amount in controversy between the parties. The injunction was dissolved, upon the argument of this motion, so far as to permit the defendant Reed to proceed to judgment in the action which he had already brought;

against the complainant, for the alleged breach of the contract between the parties; and also so far as to allow him to bring any new suits at law for subsequent breaches, and to proceed to judgment in such suits. This is not the proper place, therefore, to give a construction to the contract itself, in reference to the existence of the alleged custom or usage of persons engaged in the raising, separating, and selling iron ore, in the section of the state where this contract was made and where it was to be performed. If the existence of such a custom would control the language of the contract, so as to make the word tons therein mean gross tons of 2240 pounds, the remedy of the complainant was and is to prove the fact of such usage or custom, in the suit which has been commenced against him at law; and in any suits which may hereafter be commenced against him there, for the alleged breaches of the contract by him. The only proper questions for consideration here are whether the alleged usage is sufficiently denied by the answer; and if not, whether there is any thing in the other matters stated in the bill which affords a sufficient ground for the interference of this court.

The decision in the case of *Many* v. *The Beekman Iron Company,* (9 *Paige's Rep.* 188,) did not proceed upon the ground that it was competent for the court of chancery to make a contract for the parties which they had not intended to make for themselves. But the decision of this court, in that case, was based upon the fact that both parties had really agreed and intended to contract for the sale and purchase of the iron at the rate of 2240 pounds to the ton, and not for iron to be delivered and paid for as statute tons. And that in reducing their verbal understanding and agreement to writing, the parties by mistake neglected to insert, in the written contract, the proper words to effectuate their agreement and understanding. In that case also, the defendants, by demurring, admitted the alleged understanding and agreement of the parties, as stated in the bill; and the existence of the particular facts which were relied on by the complainant as evidence of the actual understanding and intention of the parties, which by mistake they had neglected to put in writing in the proper language to express that intention.

In the case under consideration, however, the defendant absolutely denies any intention on his part to contract for the separating of ore other than by statute tons ; and he denies the allegations in the bill which are relied upon to show that he in fact thought he had contracted to separate the ore at the rate of seven shillings for each ton at gross weight.

It is impossible for this court to make any decree, reforming this contract, founded upon the complainant's alleged ignorance of the existence of the statute fixing the number of pounds which were to constitute a ton. The allegation of ignorance is put in issue by the answer. And I do not know any means of proving his ignorance of the existence of a statutory provision, which the law presumes every citizen of the state to be acquainted with who has arrived at years of discretion. I can imagine a case in which a party holding the affirmative of the fact, may give such evidence as will satisfy a reasonable man that he had acted under a mistake of the law. And courts have sometimes granted relief in such cases ; where it could be done without impairing the rights of those who were not aware of the existence of such mistake when their rights accrued. (*Lawrence* v. *Beaubien*, 2 *Bail. Law Rep.* 623.) In the case referred to, Judge Johnson, who delivered the opinion of the court, takes a distinction between mere *ignorance* of the law, which is incapable of proof, and a *mistake* of law, which can be established by evidence. He says, the former is passive, and does not presume to reason ; and unless we are permitted to dive into the secret recesses of the heart, its presence is incapable of proof ; but the latter presumes to know when it does not, and supplies palpable evidence of its existence. And Senator Paige adopted this distinction, in the case of *Champlin* v. *Laytin*, (18 *Wend. Rep.* 423 ;) although that case was decided, both in this court and in the court for the correction of errors, upon the ground that the party had acted under a mistake of fact.

In the case under consideration, if the defendant's answer is true, he has made a contract with the complainant to separate ore for him at the rate of seven shillings for every legal ton, and

nas carried such contract partially into effect, by separating ore under it for six months, without any knowledge of the alleged ignorance of the complainant that 2000 pounds was a ton. This court, therefore, cannot reform the contract, so as to require the defendant to separate ore at the rate of seven shillings for a gross ton, without making an entirely new contract for him, which he neither made nor intended to make, for himself.

The motion to dissolve the injunction absolutely, must therefore be granted.